[L. A. No. 22684. In Bank. July 28, 1953.]

ROBERT W. ALLEN, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; IRVING BROMBERG et al., Real Parties in Interest.

Stephen J. Grogan and Henry N. Cowan for Petitioner.

No Appearance for Respondent.

Arthur Wasserman and Engelhardt, Campbell & Singer for Real Parties in Interest.

SPENCE, J.—Petitioner seeks a writ of prohibition to restrain the Superior Court of Los Angeles County from taking any further proceedings in an action filed against him by Irving and Jeanette Bromberg. The determinative question is whether the court acquired *in personam* jurisdiction over petitioner by virtue of service of process on him without the state. Consideration of our statutory provisions and settled legal principles precludes petitioner from obtaining the relief sought.

The main action is one for damages arising out of an automobile collision which occurred in this state on November 1, 1947. The complaint was filed in the respondent court and summons was issued on July 12, 1948. A second alias summons was issued on March 25, 1952. Pursuant to affidavit by plaintiff Irving Bromberg, an order for publication of summons was made on April 29, 1952. The order states that it appeared to the court that "defendant [petitioner herein] resides out of California and cannot after due diligence be found within State of California" and that he resides in Oregon. On May 3, 1952, petitioner was served personally with summons and complaint in Oregon.

On May 29, 1952, petitioner appeared specially in the action by filing a notice of motion (1) to quash the order for publication of summons on the ground that it was in excess of the power of the court and (2) to quash the service of summons and complaint on the ground that the court had not acquired jurisdiction of him because the action was *in personam*. In support of his motion petitioner filed an affidavit stating that he was a resident of California at the time of the accident,

November 1, 1947, and until September 1, 1951—living in Los Angeles until June 3, 1949, and then moving to Oakland; that since September 1, 1951, he has resided with his family in Portland, Oregon, where he is a registered voter, conducts his business, and maintains his bank account; and that he has had no intention of returning to California since moving to Oregon. It therefore appeared without conflict that both at the time that the accident occurred and at the time of the commencement of the action, petitioner was a resident of the state of California; and it further appeared that both at the time of the making of the order for publication of summons and at the time that personal service was effected on petitioner in Oregon, he was a resident of the state of Oregon. The trial court denied the motion. Petitioner challenges the propriety of that denial by this prohibition proceeding. (*Berger* v. *Superior Court,* 79 Cal.App.2d 425, 426 [179 P.2d 600]; *Briggs* v. *Superior Court,* 81 Cal.App.2d 240, 241 [183 P.2d 758].)

 As a preliminary point petitioner argues that the order for publication of summons rests on an insufficient affidavit and is therefore void. (*In re Behymer,* 130 Cal.App. 200, 202 [19 P.2d 829].) While the affidavit is a lengthy recital of extended efforts made to effect service on petitioner for over three years and includes considerable hearsay (*Narum* v. *Cheatham,* 127 Cal.App. 505, 508 [15 P.2d 1106]), it further contains statements clearly and directly establishing that petitioner was residing in Portland, Oregon, at the time application was made for the order. Accordingly, the affidavit satisfies the requirements of section 412 of the Code of Civil Procedure. (*Porter* v. *Superior Court,* 30 Cal.App. 608, 611 [159 P. 222].)

There now remains the principal question of the propriety of the trial court's assumption of *in personam* jurisdiction of petitioner. The rendition of a valid personal judgment against a defendant requires that he be a member of the class subject to its power and that he have proper notification of the action, with an opportunity to appear therein. (Goodrich, Conflict of Laws, 2d ed. 1938, § 69.)

 As long provided by California law, a person who "resides out of the state; or has departed from the state; or cannot, after due diligence, be found within the state; or conceals himself to avoid the service of summons" is subject to service by publication (Code Civ. Proc., § 412). Under such

circumstances, personal service outside the state is declared to be "equivalent to publication" (*Ibid*, § 413). This statutory language is literally broad enough in its terms to authorize a personal judgment based on the extraterritorial service of process, either through "publication" or "personal service" on a defendant without the state. (See 37 Cal.L.Rev. 80, 84.)

However, in *Pennoyer* v. *Neff*, 95 U.S. 714 [25 L.Ed. 565], it was declared that a court may not acquire jurisdiction *in personam* over a defendant in an action through the service of process outside the state in which the forum exists. This theory of jurisdiction "based upon physical power over the body of the defendant" (8 Univ. of Chicago L.Rev. 596, 598) was applied in *De La Montanya* v. *De La Montanya,* 112 Cal. 101 [44 P. 345, 53 Am.St.Rep. 165, 32 L.R.A. 82], so as to hold that service by publication upon a California resident outside the state was insufficient to support a personal judgment, even though the defendant had left the state to avoid service. This result was thought to be required by the due process clause of the federal Constitution, and the California domiciliary status of the defendant was disregarded as a distinguishing consideration from the nonresident status of the defendant in the Pennoyer case. Neither the De La Montanya case nor any other cited as subscribing to that view (e.g., *Frey & Horgan Corp.* v. *Superior Court,* 5 Cal.2d 401, 404 [55 P.2d 203]; *Merchants' Nat. Union* v. *Buisseret,* 15 Cal. App. 444, 446-447 [115 P. 58]; *Pinon* v. *Pollard,* 69 Cal.App. 2d 129, 132-133 [158 P.2d 254]) concerned a situation where a resident or former resident of this state was personally served with process while in another state. In the De La Montanya case no consideration was given to the adequacy of the notice, but rather the decision was based wholly on the proposition that "the state has no jurisdiction over . . . persons . . . not within its territory." (112 Cal. 112.)

The broad language of *Pennoyer* v. *Neff, supra,* construed as prohibiting acquisition of personal jurisdiction over any person served with process outside the state has since been reexamined in the light of its particular factual situation Thus in *Milliken* v. *Meyer,* 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357], a personal judgment of a Wyoming court was upheld against a domiciliary who had been personally served outside the state. In so deciding the question presented, the Supreme Court of the United States observed at pages 462-463: "Domicile in the state is alone sufficient to bring an absent defendant within the reach of

the state's jurisdiction for purposes of a personal judgment by means of appropriate substituted service. Substituted service in such cases has been quite uniformly upheld where the absent defendant was served at his usual place of abode in the state (citing authorities) as well as where he was personally served without the state. (Citing authority.) That such substituted service may be wholly adequate to meet the requirements of due process was recognized by this court in *McDonald* v. *Mabee*, 243 U.S. 90 [37 S.Ct. 343, 61 L.Ed. 608, L.R.A. 1917F 458], despite earlier intimations to the contrary. See *Pennoyer* v. *Neff*, 95 U.S. 714, 733 [24 L.Ed. 565]; . . . Its adequacy so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice (*McDonald* v. *Mabee, supra*) implicit in due process are satisfied. Here there can be no question on that score. Meyer did not merely receive actual notice of the Wyoming proceedings. While outside the state, he was personally served in accordance with a statutory scheme which Wyoming had provided for such occasions. And in our view the machinery employed met all the requirements of due process. Certainly then Meyer's domicile in Wyoming was a sufficient basis for that extraterritorial service." (See *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057]; also annos. 126 A.L.R. 1474; 132 A.L.R. 1361; 14 So.Cal.L.Rev. 488.)

The decision in the Milliken case is entirely in keeping with present-day needs affecting the power of a state to acquire jurisdiction over persons who have departed from its borders. The increasingly artificial nature of state boundaries, the expanding of metropolitan areas into two or more states, and the multiplying transportation facilities, especially through the widespread use of automobiles and trucks affecting the mobility of population, all bear significantly on the problem of process. The necessities of the situation are recognized in the nonresident motorist statutes (e.g., Veh. Code, § 404) permitting an injured person to obtain effective redress against transient motorists. ■ Jurisdiction in such cases is predicated upon the theory of consent of the nonresident to substituted or constructive service and the appointment of the secretary of state or like officer as agent for receipt of service

of process. (*Kane* v. *New Jersey,* 242 U.S. 160 [37 S.Ct. 30, 61 L.Ed. 222]; *Hess* v. *Pawloski,* 274 U.S. 352 [47 S.Ct. 632, 71 L.Ed. 1091]; see *Berger* v. *Superior Court, supra,* 79 Cal.App. 2d 425, 427-428; *Briggs* v. *Superior Court, supra,* 81 Cal. App.2d 240, 246.) This consent is largely fictional but it meets the problem of process in regard to highway automobile accidents involving nonresident motorists (See annos. 35 A.L.R. 951; 57 A.L.R. 1239; 99 A.L.R. 130; also, 23 Ill. L.Rev. 427, 436.) However, these statutes, in order to be valid, must provide some method of service reasonably designed to give notice of the action to the defendant (16 C.J.S. § 619, pp. 1245, 1249; *Wuchter* v. *Pizzutti,* 276 U.S. 13, 19, 24 [48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230]; see 37 Cal. L.Rev. 80, 88-89.)

With this background of legislative action and judicial decisions, the Legislature enacted in 1951 section 417 of the Code of Civil Procedure. (23 Cal.Jur. § 137, p. 763; § 159, p. 782.) That section provides: "Where jurisdiction is acquired over a person who is outside of this state by publication of summons in accordance with sections 412 and 413, the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint, and was a resident of this state at the time of the commencement of the action or at the time of service." (Stats. 1951, ch. 935, p. 2537; effective September 22, 1951.) ■ As so based on the broad authority of sections 412 and 413, section 417 is manifestly designed to restrict the power of the court if a personal judgment is to be entered. Thus its operation is made dependent on defendant's residence within the state either at the time of commencement of the action or time of service, and on his personal service with summons.

■ One main objection to service by publication on a person residing outside of the state is that due process requires fair notice. This was a consideration in *Milliken* v. *Meyer, supra,* 311 U.S. 457, upholding a personal judgment against a domiciliary based on the personal service of process while absent from the state. It was there said at page 464: "One . . . incident of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent party of the proceedings against him." The same principle on analogous reasoning applies where a domiciliary at the time of the commencement of the action

thereafter changes his state of residence and is personally served with process in the latter state. As a citizen of the state wherein the action was commenced, he had certain responsibilities arising out of his relationship to that state by reason of domicile, one of which was amenability to suit therein. Such relationship and responsibility based on citizenship within the state are not terminated by his subsequent removal to another state, and he may be served with process pursuant to a method reasonably designed to give him notice of the proceedings brought against him in the courts of the state of his original domicile prior to his departure therefrom. We therefore conclude that section 417 satisfies the requirements of procedural due process, for no more certain provision for defendant's receipt of actual notice of the institution of litigation against him could be made than through the specified personal service of process. (*Milliken* v. *Meyer, supra,* 311 U.S. 457, 463; see 40 Cal.L.Rev. 156.)

Petitioner questions the applicability of section 417 to the present case and argues that this section can have no retrospective operation so as to affect pending litigation. He takes the position that since section 417 did not take effect until some three years after the commencement of the action and at a time when he admittedly was not a resident of this state, it can have no significance here. But as above discussed, California at all times under sections 412 and 413 of the Code of Civil Procedure had the power to obtain *in personam* jurisdiction over petitioner for the purposes of this action by means of such service of process as would satisfy the requirements of due process. Then section 417, as a clarifying statute, set forth the restrictive conditions under which this state would assert *in personam* jurisdiction, thereby leaving no doubt that this state was conforming in this regard with "traditional notions of fair play and substantial justice . . . implicit in due process. . . ." (*Milliken* v. *Meyer, supra,* p. 463.) As so construed, section 417 may reasonably apply to pending as well as future litigation. In this respect it is not to be regarded as a retroactive law, and petitioner's argument correlating the section with objectionable retrospective legislation effecting an impairment of vested rights (11 Am.Jur., § 368, p. 1197 et seq.) is without merit.

The alternative writ is discharged and the peremptory writ of prohibition is denied.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J.—I concur. I think it should be mentioned, however, that although in seeking prohibition petitioner appears to have mistaken his remedy, the denial of the petition is without prejudice, and is completely unrelated, to a possible remedy by motion in the trial court to dismiss the action on the ground that the facts bring the case within the provisions of section 581a of the Code of Civil Procedure.

Such facts, as related in the main opinion, show that more than three years elapsed between the time the action was filed against petitioner (defendant in such action) and the time summons was served on him, and also that he remained a resident of California for more than three years after the action was filed. Under such circumstances, in the absence of a showing of facts suspending operation of the statute, it would seem to be the duty of the court on motion of the petitioner or of its own motion to dismiss the main action.